United States District Court
Southern District of Texas
**ENTERED**
April 26, 2019
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JENNIFER YOUNG and CHRISTOPHER LUSK, Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. H-17-3701 |
| MEDICREDIT INC., Defendant. | § | |

# MEMORANDUM AND ORDER

This case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 23] filed by Defendant Medicredit Inc. ("Medicredit"), seeking summary judgment on claims asserted by Plaintiff Jennifer Young.[1] Plaintiff Young filed a Response [Doc. # 26], and Medicredit filed a Reply [Doc. # 27]. Having carefully reviewed the full record and applicable legal authorities, the Court **grants** Medicredit's Motion.

## I. FACTUAL BACKGROUND

In February 2015, Plaintiff incurred a debt in connection with a visit to Swedish Medical Center ("Swedish") in Denver, Colorado, for medical treatment (the "February Visit"). During the February Visit, Plaintiff provided Swedish with her

[1] On April 18, 2019, all claims asserted by Plaintiff Christopher Lusk were dismissed pursuant to the parties' stipulation. *See* Order [Doc. # 29].

cellphone number and signed the "Conditions of Admission and Consent for Outpatient Care" ("February Consent"). In that document, Plaintiff gave consent for Swedish or its collection agents to contact her by telephone, including the use of "pre-recorded/artificial voice messages and/or use of an automatic dialing device." *See* February Consent, Exh. C to Motion, ¶ 10.

Plaintiff incurred a second debt in connection with a visit to Swedish for medical treatment in August 2015 (the "August Visit"). During the August Visit, Plaintiff again provided Swedish with the same telephone number and signed the "Conditions of Admission and Consent for Outpatient Care" ("August Consent"). By her signature, Plaintiff again gave consent for Swedish or its collection agents to contact her by telephone, including the use of "pre-recorded/artificial voice messages and/or use of an automatic dialing device." *See* August Consent, Exh. D to Motion, ¶ 10.

Plaintiff failed to pay her debt to Swedish. Plaintiff claims that she disputed the debt as excessive. Swedish placed the delinquent account for the February Visit with Medicredit on December 2, 2015. Medicredit began contacting Plaintiff by telephone on December 7, 2015. Swedish placed the delinquent account for the August Visit with Medicredit on May 10, 2016.

Plaintiff filed this lawsuit on December 7, 2017. Plaintiff alleges that Medicredit contacted her by telephone in violation of the Telephone Consumer Protection Act ("TCPA") and the Fair Debt Collection Practices Act ("FDCPA").[2] After the close of discovery, Defendant moved for summary judgment on all claims. The Motion has been fully briefed and is now ripe for decision.

## II. STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to her case and on which she will bear the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Summary judgment should be rendered if the pleadings, the discovery and other admissible materials in the record show that there is no genuine, triable issue of material fact and that the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23, 327; *Curtis*, 710 F.3d at 594.

---

[2] Plaintiff in the Original Complaint also alleged that Medicredit violated the Texas TCPA and the Texas Deceptive Trade Practices Act. In her Response to Defendant's Motion, Plaintiff did not oppose summary judgment on these two claims. As a result, Defendant's Motion for Summary Judgment on the Texas claims is **granted** as unopposed.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012). The moving party, however, "need not negate the elements of the nonmovant's case." *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine, triable issue for trial. *See Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013). "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-13). The Court is not required, however, to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id*. (citing *Reaves Brokerage*, 336 F.3d at 413); *accord, Little*, 37 F.3d at 1075.

The "substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible," although the evidence need not be in admissible form at the summary judgment phase. *See Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017). Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000).

## III. TCPA CLAIMS

### A. Statutory Provision

The TCPA prohibits any person, absent the prior express consent of the telephone call recipient, from "mak[ing] any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a paging service [or] cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii); *Campbell-Ewald Co. v. Gomez*,

__ U.S. __, 136 S. Ct. 663, 666-67 (2016). Prior express consent may be revoked orally or in writing. *See Adamcik v. Credit Control Servs., Inc.*, 832 F. Supp. 2d 744, 753 (W.D. Tex. 2011); *Cherkaoui v. Santander Consumer USA, Inc.*, 2013 WL 12328769, *5 (S.D. Tex. June 7, 2013).

**B. Consent**

Initially, Plaintiff alleged that Defendant's calls to her cellphone were made using an automatic telephone dialing system and were without her prior consent. *See* Complaint, ¶ 26. Defendant presented evidence that Plaintiff twice gave written consent for Medicredit, as a collection agent for Swedish, to telephone her using "pre-recorded/artificial voice messages and/or . . .an automatic dialing device." *See* Exhs. C and D to Motion, ¶ 10. After reviewing the documents, Plaintiff admitted that she "consented to being called by Swedish Medical Center's collection agents" and "consented to calls by means of prerecorded or artificial voice messages and/or use of an automatic dialing device." *See* Young Deposition, Exh. A to Motion, pp. 27-28.[3]

[3] During her deposition, Plaintiff testified that she did not believe she gave valid consent in August 2015 because she went to the hospital for a migraine, which "impairs judgment." *See* Young Depo., p. 24. Plaintiff admitted, however, that the February 2015 treatment at Swedish was for a cat bite and that she was not given any medication prior to signing the February Consent. *See id.* at 28.

Plaintiff alleges that she orally revoked her consent.[4] *See id.* at 32. Plaintiff alleges that she asked Medicredit to stop calling her, but she does not remember when that occurred. *See id.* She has no recordings of calls from Medicredit during which she asked Defendant to stop calling her or otherwise revoked consent for the calls. *See id.* at 36.

Plaintiff's mother, Vickye Manning, testified at deposition that she heard Plaintiff on the phone saying "stop calling me." *See* Deposition of Vickye Manning, Exh. 1 to Response, p. 15. Plaintiff testified in deposition, however, that her mother did not answer the telephone, that her mother was not on the line listening to the call, and that her mother asked her who was calling and Plaintiff ***told her*** it was Medicredit. *See* Young Depo., pp. 59-60 (emphasis added). As a result, Manning has no personal knowledge regarding the identity of the caller and her testimony is inadmissible hearsay. *See* FED. R. EVID. 602 (a witness may testify only if she "has personal knowledge of the matter"); 802 (hearsay inadmissible unless exception applies). Plaintiff does not identify any applicable exception to the hearsay rule that would allow admission of Manning's hearsay testimony.

---

4 Previously, Plaintiff alleged that she revoked consent in writing based on a letter purportedly sent to Defendant by her attorney. Defendant advised Plaintiff that the address on the letter was incorrect and that Medicredit did not receive it. In the Response to the Motion, Plaintiff no longer asserts written revocation of consent.

Additionally, Manning testified that she overheard Plaintiff say "stop calling me" during phone calls in "September, October, November of '15." *See* Manning Depo., p. 15. She remembers this period specifically because Plaintiff had just moved back to Houston and they "were together a lot during those months." *See id.* at 16. Medicredit's uncontroverted Call History records establish, however, that Plaintiff's account was not referred to Medicredit until December 2, 2015, and the first telephone call to Plaintiff did not occur until December 7, 2015.

Medicredit has presented evidence that there were only two phone calls during which Plaintiff spoke with a Medicredit representative – one phone call on December 31, 2015, and the other on February 3, 2016. *See* Declaration of Don Wright, Exh. E to Motion, ¶ 6. Recordings of the two phone calls are in evidence as MC0001 and MC0002. Plaintiff does not say anything in either recording that could be construed as a revocation of her prior consent for automated dialing phone calls. On the December 31, 2015 recording, Plaintiff says "Hello?" and the call is disconnected. *See* MC0001. On February 3, 2016, after Medicredit had been calling Plaintiff for almost two months, Plaintiff says "Hello?" and "May I ask who is calling?" *See* MC0002. After the caller identifies herself as calling "from Medicredit on behalf of Swedish Medical Center," Plaintiff hangs up. *See id.* Although Plaintiff summarily asserts, with no supporting detail, that she repeatedly asked Medicredit to

stop calling her, it cannot be disputed that on February 3, 2016, when on the telephone with a Medicredit representative, Plaintiff did not say "stop calling" or anything similar and, instead, hung up.

It is undisputed that Plaintiff gave express written consent for Medicredit, as a collection agent for Swedish, to telephone her using "pre-recorded/artificial voice messages and/or . . . an automatic dialing device." Plaintiff has failed to present evidence that raises a genuine, triable issue regarding an alleged oral revocation of that consent. As a result, the Court grants Defendant's Motion for Summary Judgment on the TCPA claim.

## IV. FDCPA CLAIM

### A. Statutory Provisions

The FDCPA is intended to "eliminate abusive debt collection practices by debt collectors." *See* 15 U.S.C. § 1692(e). In the Complaint, Plaintiff lists several sections of the FDCPA. *See* Complaint [Doc. # 1], ¶ 18. These include discussing a debt with a third party in violation of 15 U.S.C. § 1692b(2), using obscene or profane language in violation of 15 U.S.C. § 1692d(2), and stating that non-payment will result in arrest or criminal prosecution in violation of 15 U.S.C. § 1692e(4). *See id.* Plaintiff has not presented evidence of most of the alleged violations. Indeed, Plaintiff admits that Medicredit did not use language that was harassing, oppressive, or abusive. *See*

Young Depo., p. 36. Plaintiff's FDCPA claim is now limited to the allegation that Defendant violated the FDCPA by making calls that were harassing, oppressive or abusive because of the "number, frequency and times of the calls." *See id.* at 36-37.

The FDCPA provides that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Section 1692d(5) prohibits a debt collector from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Although most sections of the FDCPA are strict liability provisions, § 1692d(5) contains an "intent" requirement. 15 U.S.C. § 1692d(5); *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176 n.11 (9th Cir. 2006).

The FDCPA also prohibits a debt collector from calling an individual before 8:00 a.m. or after 9:00 p.m. *See* 15 U.S.C. § 1692(c)(a)(1).

**B. <u>Volume of Calls - § 1692d(5)</u>**

Plaintiff alleges that Medicredit telephoned her at least 20 times. *See* Complaint, ¶ 24. Defendant's records demonstrate that it telephoned Plaintiff 79 times between December 7, 2015, and October 18, 2017. *See* Call History, Exh. G to Motion. Medicredit did not call Plaintiff more than once on any given day. *See id.*

Medicredit telephoned Plaintiff 2 days in a row on 12 occasions over the 681 day period in issue. *See id.* Plaintiff concedes that she does not have any evidence that Medicredit's Call History records are incomplete. *See* Young Depo., pp. 36, 64.

The uncontested Call History demonstrates that Medicredit's calls to Plaintiff were not, and were not intended to be, harassing, oppressive or abusive. Courts have granted summary judgment in favor of the defendant in similar, yet more egregious, circumstances. For example, in a Louisiana case, the district court held that there was no triable issue regarding the plaintiff's FDCPA claim where he received approximately 14 calls over a 5-week period of time. *See Reed v. Receivable Recovery Servs., LLC*, 2017 WL 1399597, *13 (E.D. La. Apr. 19, 2017), *aff'd*, 702 F. App'x 239 (5th Cir. 2017). In a case in this federal district, the Court granted summary judgment for a defendant who made 55 phone calls to the plaintiff over a 3-month period. *See Clingaman v. Certegy Payment Recovery Servs.*, 2011 WL 2078629, *5 (S.D. Tex. May 26, 2011). Similarly, in a Michigan case, the court granted summary judgment for a defendant who placed between 22 and 60 calls in a 5-week period. *See Saltzman v. I.C. Sys., Inc.*, 2009 WL 3190359, *6 (E.D. Mich. Sept. 30, 2009).

Here, it is uncontroverted that Medicredit placed 79 calls over a period of more than 22 months, and never telephoned Plaintiff more than once per day. This

evidence, viewed in the light most favorable to Plaintiff, does not raise a triable issue regarding whether the calls were or were intended to be harassing for purposes of Plaintiff's FDCPA claim. As a result, Defendant is entitled to summary judgment on the FDCPA claim based on 15 U.S.C. § 1692d(5).

**D. Timing of Calls**

Plaintiff claims that Defendant called her at 6:00 a.m. and after 9:00 p.m. *See* Young Depo., p. 33. Plaintiff has no contemporaneous records of these calls, and she does not remember when they occurred. *See id.* at 32-33. Indeed, she is unable to identify a specific month or months during the more than 22-month time period when she claims to have received phone calls from Medicredit at 6:00 a.m. or after 9:00 p.m. *See id.* at 32.

Medicredit has presented the Call History reflecting that no calls were made to Plaintiff's phone before 8:00 a.m. or after 9:00 p.m. *See* Call History, Exh. G to Motion. As noted above, Plaintiff concedes that she has no evidence, or even any reason to believe, that the Call History records are not complete. *See* Young Depo., p. 36; p. 64.

Plaintiff has failed to present evidence that raises a genuine, triable issue regarding calls made before 8:00 a.m. or after 9:00 p.m. – calls that would be in

violation of 15 U.S.C. § 1692c(a)(1). As a result, Defendant is entitled to summary judgment on Plaintiff's FDCPA claim based on that provision of the statute.

## IV. CONCLUSION AND ORDER

As discussed herein, Plaintiff has not presented evidence that raises a genuine, triable issue regarding her claims under the TCPA or the FDCPA. Plaintiff has not filed any opposition to Medicredit's Motion for Summary Judgment on the Texas state law claims. Accordingly, it is hereby

**ORDERED** that Medicredit's Motion for Summary Judgment [Doc. # 23] on the claims asserted by Plaintiff Jennifer Young is **GRANTED**. The Court will issue a separate final judgment.

SIGNED at Houston, Texas this **29th** day of **April, 2019**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE